UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Salvatrice ZACCONE-WHITEFLEET,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civ. No. 16-1609 (KM)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

    Salvatrice Zaccone-Whitefleet brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (the "SSA") and for Supplemental Security Income ("SSI") under Title XVI of the SSA. *See* 42 U.S.C. §§ 401–403 and 1381–1385. Administrative Law Judge ("ALJ") Olarsch reheard the matter on remand from a prior decision of this Court, per Hon. Katharine S. Hayden, U.S.D.J. Finding the claimant not disabled, he denied benefits. For the reasons expressed herein, the decision of the Commissioner on remand is AFFIRMED.

## I. APPLICABLE STANDARDS

    To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423. To be eligible for Title XVI SSI benefits, a claimant must meet the income and resource limitations of 42 U.S.C. § 1382. To qualify under either statute, a claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than

1

twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see, e.g., Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009).

### A. Five-Step Process and this Court's Standard of Review

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 CFR §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

> **Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 CFR §§ 404.1520(b), 416.920(b). If not, move to step two.
>
> **Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.
>
> **Step 3:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 CFR Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).
>
> **Step 4:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.
>
> **Step 5:** At this point, the burden shifts to the Social Security Administration to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 CFR §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*,

2

474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

For the purpose of this appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the ALJ are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007) (non-precedential). Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence that the claimant is disabled and entitled to benefits. *Podedworny*, 745 F.2d at 221–222; *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart*, 111 F. App'x 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that [the claimant] was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable.") (not precedential). It is

3

also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

## II. BACKGROUND

### A. Original Determination and Appeal

Zaccone-Whitefleet applied for DIB and SSI benefits on March 8, 2011, alleging a January 1, 2011 onset of disability (ALJ decision, R 22).[1] The ALJ hearing the case at that time, Norman R. Zamboni, found that she suffered from the severe impairment of panic disorder. (R 24) He ruled that she did not have an impairment or combination of impariments that meets or medically equals the severity of the listed impairments. ALJ Zamboni defined Ms. Zaccone-Whitefleet's residual functional capacity ("RFC") as follows:

> 5. ... I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitation: the claimant can mentally understand and remember instructions, maintain concentration, pace and persistence, related [*sic*] to other individuals, and adapt to work setting sufficiently to perform simple work duties.

(R 26)

Judge Zamboni found that there were jobs in the national economy that the claimant could perform. His decision states that "[t]he claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. However, these limitations have little or no effect on the occupational base of unskilled work." (R 29) The ALJ did not use the service of a vocational expert ("VE") in conducting that analysis. Rather, he employed section 204.00 of the Medical-Vocational Guidelines and Social Security rulings 85-15 and 83-10, found that the claimant could perform "simple duties," and

---

[1] The post-remand administrative record, leading to the decision now under review (cited here as "R__"), is filed on the docket of this case, Civ. No. 16-1609, at ECF no. 5, supplemented by a copy of the ALJ hearing at ECF no. 11.

4

ruluded that she was "obviously able to perform 'unskilled' work," examples of which exist in the national economy. (R 29) ALJ Zamboni concluded that Ms. Zaccone-Whitefleet was not disabled, and denied benefits.

On appeal, Judge Hayden questioned the validity of ALJ Zamboni's analysis. In an oral decision, she stated as follows:

> Above all, there is a circular [sic] made in the last paragraph that brings everything home, that is based upon a conflation of simple duties with unskilled work, the desire being to get into the unskilled work category, without a consideration of who, what, where, when and how, this plaintiff would behalf [sic] in a specific workplace setting.
>
> A VE, responding to hypotheticals, would be able I believe to better orient the decision away from conclusory terms and grids as a framework and the grid as a framework to findings that might even come out the same way. But at least they would be illustrated by hypotheticals. And maybe, and maybe, some testimony from the VE as to what simple duties have to do with unskilled work.
>
> There is simply too little that's conveyed, by way of meaning specific to this particular claimant and this particular record, for the Court to find that the finding of not disable is supported by substantial evidence, because of the omission of specifics regarding this claimant's ability to handle workplace obligations, pressures, expectations. And simple duties doesn't do enough for that.
>
> So it will be remanded for the purpose of taking the testimony of a vocational expert based on the record.

(R 279–80) Judge Hayden's accompanying order, dated February 4, 2015, stated that the matter was "reversed and remanded to the Commissioner for a new decision and a new hearing to include the testimony of a vocational expert." (R 281)

### B. ALJ's Decision on Remand

On remand from the District Court, the Appeals Council remanded the matter, which was reheard by ALJ Leonard Olarsch. Judge Olarsch was directed to conduct a new hearing and take any further action needed to complete the administrative record and issue a new decision. In particular, the

5

new hearing was to include the testimony of a VE. Ms. Zaccone-Whitefleet was given the opportunity to submit updated medical records. A new hearing, at which she was represented by counsel, was held on October 1, 2015. (R 235, 335–60)

ALJ Olarsch's written decision properly follows the five-step process. I summarize his findings and conclusions here:

The claimant met insured status and had not engaged in gainful activity since January 1, 2011, the alleged onset date. (R 237 ¶¶ 1, 2) "The claimant has the following severe impairment: anxiety disorder (20 CFR 404.1520(c) and 416.920(c)." (R 237 ¶ 3)

That impairment, alone or in combination with others, did not meet or medically equal on of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R 238 ¶ 4) The ALJ found moderate restriction of activities of daily living. The claimant was able to care for her family by making meals, doing chores, and the like. She tended to her hygiene, although sometimes went for days without showering. She can drive, although she does not like to, can shop, and can manage money. She had mild difficulties with social functioning. As for concentration, persistence or pace, she had moderate difficulties. Here the ALJ cited the consultative examination of Dr. Misking, at which she was coherent and compliant; followed a three-step command; had good comprehension and spoke clearly; showed no sign of memory problems or thought disorder; and had a satisfactory persistence level. She did however, have an anxious mood, with restlessness and worry. (R 238) There were no episodes of decompensation.

ALJ Olarsch assessed Ms. Zaccone-Whitefleet's RFC as follows:

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to simple, routine and repetitive tasks, will be off-task 10% of the workday and will most likely be absent up to 1 day a month, due to mental difficulties.

6

(R 239 ¶ 5) The ALJ reviewed evidence of the claimant's self-reported extreme anxiety, as well as the medical evidence of her anxiety disorder. He concluded that although the symptoms were real, the evidence did not fully support the claimant's statements concerning the intensity, persistence, and limiting effects of those symptoms. (R 240) To support that conclusion, the ALJ reviewed the medical and other evidence in detail. (R 240–43) I discuss his review of that evidence in more detail below. (Section III.B, *infra.*)

The ALJ found that Ms. Zaccone-Whitefleet could not perform her past relevant work as a secretary, citing testimony of the vocational expert. (R 243–44 ¶ 6) She was 35 years old as of the onset date, had a high school education, and could communicate in English. (R 244 ¶¶ 7, 8)

At step five, the ALJ concluded that considering the claimant's age, education, work experience, and RFC, she could perform jobs that exist in significant numbers in the national economy. (R 244–45 ¶ 10) Unlike the prior ALJ, as required by Judge Hayden's remand, Judge Olarsch called a vocational expert (VE), and relied on that expert's testimony in reaching that result, which is discussed in more detail below. (Section III.C, *infra.*)

Accordingly, ALJ Olarsch found Ms. Zaccone-Whitefleet not disabled and denied benefits. (R 245) This appeal followed.

### III. DISCUSSION

This appeal is focused on the issues that were the basis for Judge Hayden's remand: Ms. Zaccone-Whitefleet's RFC and her ability, or not, to perform jobs existing in the national economy.

#### A. Adherence to Terms of Remand

Counsel for the claimant argues generally that the ALJ could not have found her disabled while remaining faithful to the terms of Judge Hayden's remand. I disagree. Judge Hayden believed that, particularly in light of the mental/psychological nature of the impairment, the first ALJ could not validly perform that analysis by juggling the concepts of "simple duties" and "unskilled work," or by applying the rules of thumb embodied in the grid. It was necessary, she said, to consider specifically the manner in which Zaccone-

7

Whitefleet's impairments interfered with her ability to perform tasks required by her employment. That analysis, said Judge Hayden, would require the testimony of a VE. Judge Hayden expressly acknowledged that on remand, the case "*might even come out the same way*. But at least they would be illustrated by hypotheticals. And maybe ... some testimony from the VE as to what simple duties have to do with unskilled work." (R 279–80 (emphasis added))

For the reasons expressed herein, I find that ALJ Olarsch discharged his duty to implement the remand, and that his findings are supported by substantial evidence.

### B. RFC

The RFC is an assessment of what the claimant is capable of doing in light of the limitations that her impairment imposes on her activities. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999). Based on the evidence, the ALJ found that the claimant had the RFC to perform "a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to simple, routine and repetitive tasks, will be off-task 10% of the workday and will most likely be absent up to 1 day a month, due to mental difficulties." (R 239)

The claimant's brief on appeal asserts that the limitations found in her RFC are too stingy. There was evidence in the record, she says, that her depression, panic attacks, and PTSD are more serious and limiting, and the ALJ's failure to credit such evidence, in her view, violated the "*Cotter* Doctrine." Under that line of cases, "[l]imitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but 'cannot reject evidence for no reason or for the wrong reason'" *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993), and *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)). Thus the ALJ was not required to credit all of the evidence now cited by the claimant, but he was required to consider it and render a decision based on

8

the record. Reviewing the ALJ's decision, I find that he reviewed and sifted the evidence appropriately.

Here, the claimant's severe impairment is not a physical, exertional one, but a psychological, non-exertional one: anxiety disorder. The version of the RFC found on remand limits the claimant's activities to routine, repetitive jobs, and takes into account her being off-task for 10% of the workday and absent once a month. It is immediately apparent that this version of the RFC is at least facially calculated to address the particular, concrete limitations imposed by the claimant's psychological impairment. I therefore consider whether it has an adequate foundation in the evidence.

The ALJ's decision finds that the claimant suffers from a severe impairment: anxiety disorder. (R 237–38) The issue here really involves the ALJ's assessment that the limitations on the claimants activities were not as severe as claimed. That assessment, I find, is based on substantial evidence of record.

*Statements by Ms. Zaccone-Whitefleet and Third Party statements*

ALJ Olarsch appropriately noted and summarized the claimant's self-reporting of her symptoms and activities. (R 240)

Ms. Zaccone-Whitefleet complained of extreme anxiety and panic attacks. She reported that the panic attacks occur twice per week, last for 45 minutes, and require about an hour of recovery time.[2] This, she says, is inconsistent with the ALJ's finding that she would be absent once per month or off-task 10% of the time.

Ms. Zaccone-Whitefleet is married, with two children, aged 11 and 13, for whom she cares. She attends church sometimes, but dropped out. There are occasional visits from church members, but not from friends. She has difficulty concentrating and completing things, and cannot adhere to a schedule for a 4–

---

[2] Subjective testimony, to the extent credited by the fact finder, may support a finding of disability. I note, however, that there was no testimony or evidence that corroborated the claimed severity or frequency of these allegedly debilitating attacks.

9

5 day work week. She moved to Georgia in 2014, and has not had medical treatment since then.

A friend filled out a function report. (R 147) This report corroborated the claimant's statements that she suffers from panic or anxiety attacks, acts depressed, has trouble sleeping, and tires easily. Although the friend calls the panic attacks disabling, the facts in her report do not support that. She says, for example, that the panic attacks tend to manifest themselves in irritability and impatience. (R 153) Some days, she says, are better than others. The friend's report also states that Ms. Zaccone-Whitefleet copes with managing the house from morning until night and takes good care of her children, without meaningful assistance, drives, and otherwise copes with daily living activities.

The ALJ concluded that the claimant's impairment could reasonably be expected to cause symptoms of this kind. He found, however, that the claimant's statements concerning the intensity, persistence, and limiting effects of the symptoms were "not entirely credible" in light of the objective evidence. (R 240) That conclusion rested on his survey of the remaining medical evidence.

*Dr. Greenspan:*

The chief objective medical evidence supporting the claimant's position consists of the February 2011 opinion and treatment notes of her physician, Bernard Greenspan, D.O. (R 190) Dr. Greenspan's report states "Cannot work. Due to severe emotional reaction She should return to clinic as needed."

ALJ Olarsch gave limited weight to this opinion, and gave his reasons for doing so. (R 243) Disability, he observed first, is a legal finding, not a medical one, requiring an independent determination by the SSA. In that he was correct. *See* 20 C.F.R. §§ 404.1527(d)(2), 1546(c); *id.* §§ 416.927(d)(2), 946(c); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

Second, he stated, the doctor stated a largely unsupported conclusion that the claimant had a "severe emotional reaction." Third, looking for such backup in Dr. Greenspan's treatment notes, the ALJ found little or no support.

10

Ms. Zaccone-Whitefleet reported improvement in her anxiety, and Dr. Greenspan observed good insight, judgment, and orientation in all spheres.

From my reading of Dr. Greenspan's notes, I would add the following: Dr. Greenspan, although of course a physician, is not identified as a specialist in mental health. After what seems to have been a complete physical examination, he stated that his clinical impression was "Mixed disorders as reaction to stress." He also stated that the patient's mood and affect were "anxious and appropriate to situation." (R 191) As to anxiety, "Patient indicates medication improves," and he prescribed Xanax. (R 190–91)[3] This diagnosis falls far short of corroborating Ms. Zaccone-Whitefleet's reports of severe, frequent, ongoing, and debilitating panic attacks.

The ALJ was entitled to discount Dr. Greenspan's opinion to the extent it suggested limitations greater than those stated in the RFC.

*Dr. Miskin and Care Plus (Charles Kim, MD)*

The ALJ reviewed a course of treatment by Solomin Miskin, M.D., and Care Plus NJ (Charles Kim, MD) from February through August, 2011.

In February 2011 (apparently shortly after her visit to Dr. Greenspan), Ms. Zaccone-Whitefleet was evaluated at Care Plus NJ, where she went for psychotherapy. (R 227) The diagnosis was Axis I Adjustment disorder with anxious mood, Axis IV untreated anxiety disorder. Her mental state was "very anxious." She was assigned a GAF score of 55. Her panic attacks were "severe" and "clearly stress related." The evaluator noted that she suffered panic attacks during the interview when discussing her belief that her husband had been cheating on her. There were no indications of concentration difficulties, cognitive deficits, or phobias. The recommendation was continued use of Xanax

---

[3] The ALJ also noted that the exam dated from 2011 and thus was not very current. He received updated medical evidence, however.

Dr. Greenspan's prior notes, dating from December 2010, documented complaints of leg numbness and light headedness. He noted "mood and affect anxious, appropriate to situation, panic, stressed and tearful." His diagnostic impression was "meralgia paresthetica. Mixed disorders as reaction to stress." He prescribed a chest x-ray, but no medication. (R 192–93; discussed by ALJ at R 240)

11

and psychotherapy and, if progress was not satisfactory, consideration of a trial of SSRI (antidepressant) medication.

The ALJ appropriately summarized and discussed this evidence. I add that the only first-hand observation at Care Plus NJ, refers to situation-dependent "attacks" (plural) brought on by discussion of marital infidelity. (R 227–28) From the context, these attacks were transient reactions to the discussion of a topic that would upset anyone; if they had been debilitating, 45-minute affairs requiring an hour of recovery, that surely would have been noted. There is no indication, for example, that they interfered with the remainder of the interview or examination.

In May 2011, Ms. Zaccone-Whitefleet had a consultative examination with Solomin Miskin, M.D. His report is in the record (R 200) and was discussed by the ALJ (R 240) She reported panic symptomatology and depression linked to her discovery three months earlier that her husband had an affair. She reported being on medication and stated that it had "been of some help." (R 200) Dr. Miskin performed a mental status examination and diagnosed the claimant with PTSD, moderate severity, and panic disorder with agoraphobia, severe. (R 201) The ALJ noted that the examination also revealed that she thought clearly, could perform simple mathematical calculations, had average intelligence, and reported having friends, although her incentive to socialize was currently diminished. Her GAF was determined to be 55.

Also in the record (R 229), and discussed by the ALJ (R 241), is an August 2011 report of discharge from treatment from Care Plus NJ. Ms. Zaccone-Whitefleet reported struggling with anxiety and anger about her husband's affair and their financial need to move in with his family for a time. She "reported decrease in panic attacks," but said she continued to feel irritable and suffered from "perfectionistic thinking." Her GAF had improved somewhat to 58. She was currently on Xanax as well as Celexa.

*State Agency Consultants*

The ALJ reviewed, and gave weight to, evaluations by State DDS consultants. (R 242–43)

12

In June 2011 (between Dr. Miskin's evaluation and the Care Plus discharge summary), Ryan Mendoza, Psy. D., filed two reports. He noted anxiety as well as reported PTSD and panic disorder. (R 210) His RFC evaluation involved 20 areas of workplace functioning under the general categories of understanding and memory, sustained concentration and persistence, social interaction and adaptation. (R 219–20) Dr. Mendoza found that the claimant was "not significantly limited" as to 11 of those areas. As to the remaining 9, he found only "moderate" limitation. Dr. Mendoza noted from his review of the medical record that clinical evaluation had noted no though disorder, anxious mood with appropriate affect, adequate memory, attention, and concentration, based on tests such as memory of lists and backwards spelling. "Based on MER in file, Cl[aimant] is able to understand and follow 2 step instructions. Can maintain attention for at least 2 hours." (R 221)

On September 12, 2011, Pamela Foley, a psychologist, reviewed the file and found no deterioration of condition. (R 223)

The ALJ was entitled to, and did, rely on the reports of Mendoza and Foley in concluding that Ms. Zaccone-Whitefleet's impairment did not wholly disable her, but only limited her work functions to some extent.

*Updated Medical Evidence on Remand*

Treatment resumed in June 2013, mostly in connection with complaints of depression, decreased energy, anxiety, and poor concentration. At a followup in July 2013, she reported anxiety and dysphoria, and stated she was considering going back on medication. In August 2013, she agreed to restart medication; she did not return until June 2014, when she reported being off medication for several months, but wished to resume because she was doing well in therapy but wanted to feel 100% better.

*ALJ's Findings Based on the Evidence*

The picture that emerged, in the ALJ's estimation, was that the evidence did not support a claim of total disability. The treatment records were limited and showed intact mental status despite anxiety, panic attacks and depression. The claimant was alert, with no deficits in memory, concentration,

13

attention, or persistence, and no thought disorders or cognitive deficits. The claimant had reported improvement with treatment, including medication, but started and stopped medication at will and appeared for treatment sporadically. The ALJ surveyed the medical evidence, as summarized above, and found that it did not support the severe limitations claimed. He also reviewed and credited the state consultants' findings that the impairments were not severe, but moderate, and only in some areas. (R 242)

Those findings have a firm foundation in the evidence. They support the ALJ's conclusion that the impairment was not as severe as claimed, and that "the residual functional capacity accounts for the claimant's complaints by limiting her to simple, routine and repetitive tasks and by allowing the claimant to be off-task 10% of the workday as well as miss 1 day of work per month. Additional limitations are not supported by the record." (R 242)

That a different ALJ could have seen the evidence differently is not a sufficient basis for reversal. The findings made by this ALJ are supported by substantial evidence, and under my deferential standard of review, that is enough to sustain the ALJ's finding as to the claimant's RFC.

### C. Ability to Perform Work Existing in the National Economy

The claimant's counsel on appeal also attacks the ultimate conclusion that Ms. Zaccone-Whitefleet can perform jobs existing in the national economy. To some degree, this challenge duplicates her challenge to the RFC; the argument is that the ALJ's ultimate finding rested on an RFC that understated the extent of her limitations.

On remand, as directed, the ALJ went beyond mere diagnosis and delved into the issue of the extent and nature of the limitations on the jobs Ms. Zaccone-Whitefleet can do. In doing so, he considered, *inter alia,* the testimony of a VE, Tanya Edgehill. (*See* R 351–56)

The ALJ's opinion explicitly acknowledged and took into account that the claimant's "ability to perform work at all exertional levels has been compromised by nonexertional limitations." (R 244) Thus the ALJ asked the VE

14

to consider the claimant's RFC, as already found, plus her age level, education, and work experience,[4] in determining whether she could perform jobs existing in the national economy. In particular, at the hearing, the ALJ highlighted the limitation of being off task up to 10% of the work day and absent up to one day per month.

The VE, having reviewed the evidence, concluded that a claimant with those limitations could perform representative occupations such as hand packager (DOT # 920.587-018); garment folder (DOT # 709.687-066); and assembler (DOT # 739.687-066). All of these jobs exist in the national economy in the tens or hundreds of thousands. (R 244, 352–53) They involve simple, repetitive, unskilled work. (R 353)

Meeting Judge Hayden's concerns, the VE's opinion explicitly took into account the extent to which the claimants' nonexertional impairments would compromise particular activities required by employment. Thus the VE testified, and the ALJ noted, that the claimant said she could concentrate for no more than two hours at a time. These representative jobs, testified the VE, could be performed in two-hour segments. (R 244, 353, 355) With the usual breaks, a person could thus be off task up to 15% of the work day. (R 356)

It is true, of course, that a hypothetical question posed to a VE must reflect all of a claimant's specific limitations—mental and physical—where they are supported by sufficient evidence. *See, e.g., Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002) ("Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence.") That does not mean, however, that the VE must be asked to opine on all limitations *alleged* by a claimant. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) ("We do not require an ALJ to submit to the vocational

---

[4] Ms. Zaccone-Whitefleet was born in 1975, making her 35 as of the claimed disability onset date, and therefore a "younger individual" aged 18–49. 20 C.F.R. § 404.1563, 416.963. She has a high school education and is able to communicate in English. (R 244) She last worked as a secretary. The ALJ accepted the VE's testimony that she was not currently able to perform that past relevant work. (R 243–44)

15

expert every impairment *alleged* by a claimant. Instead . . . hypotheticals posed must accurately portray the claimant's impairments and that the expert must be given an opportunity to evaluate those impairments as contained in the record. . . . the ALJ must accurately convey to the vocational expert all of a claimant's *credibly established limitations*." (internal quotation marks and citations omitted)).

For the reasons stated above, the limitations in the RFC, as found by the ALJ, were based on substantial evidence. That being the case, the VE's opinion had a valid foundation.

## IV. CONCLUSION

For the foregoing reasons, the decision of the ALJ is AFFIRMED. An appropriate order accompanies this Opinion.

Dated: July 27, 2017

**KEVIN MCNULTY**
**United States District Judge**